**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No.** 23-mj-116 (MAU) |
| **v.** | |
| **TYRON HINES,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Tyron Hines be detained pending trial pursuant to 18 U.S.C. §§ 3142(d)(1)(A)(iii) (defendant on probation for any offense), 3142(f)(1)(C) (narcotics offense with a maximum sentence greater than ten years) and 3142(f)(1)(E) (felony involving a firearm) of the federal bail statute. This is the fifth time Mr. Hines has been charged in connection with the unlawful possession of a firearm. And this time, he possessed a firearm while also in possession with the intent to distribute significant quantities of deadly narcotics. This arrest came just weeks after Mr. Hines was arrested for having two loaded firearms in his vehicle after a public shooting. In light of the presumptions of detention applicable to these offenses, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions short of detention that can ensure the safety of our community. For the following reasons, the Court should order Mr. Hines detained pending trial.

## BACKGROUND

### *The May 13, 2023 Shooting Outside Abigail Nightclub*

On May 13, 2023, at approximately 3:10 AM, a group of individuals were engaged in an altercation in a parking garage outside of the Abigail nightclub.   Mr. Hines was among this group.   During the altercation, a group of men including Mr. Hines surrounded a silver Ford sedan that was attempting to drive out of the garage.   Two of the men with Mr. Hines— Individual 1 and Dirk Easton—can be seen carrying firearms.   As the Ford attempted to reverse out of the garage, Mr. Easton chased the car and fired multiple rounds at the front windshield with a black handgun with an extended magazine.



One of the bullets apparently ricocheted back and hit Mr. Easton in the face.[1]   Mr. Hines and others assisted Mr. Easton into Mr. Hines' black BMW sedan with Virginia tags that were registered to him, which was parked nearby.   Mr. Hines drove Mr. Easton and others to GW

---

[1] The surveillance video does not reflect any apparent gunshots coming from the reversing Ford and therefore it appears that Easton likely shot himself.

Hospital.   Hines can be seen on surveillance video entering and exiting the driver's seat of the vehicle after initially arriving at the hospital and after assisting Mr. Easton into the hospital. After assisting Mr. Easton inside, the group began walking away from the hospital when police arrived. and remained outside the hospital when police arrived.   After officers arrived on scene, they found Hines' BMW, which had been identified as a vehicle of interest given its flight from the scene of the shooting.   An officer looked through the car's window and saw a firearm on the floor behind the front passenger seat.



The firearm was identified as a black Glock 35 .40 caliber handgun with serial number ADKH277. The firearm had one round in the chamber and twenty-one rounds of ammunition in a twenty-nine-round magazine. Additionally, the firearm was equipped with what appears to be a conversion device, commonly referred to as a "Glock switch" or "giggle switch," which changes a handgun from a semi-automatic to an automatic weapon.   (The switch has not yet been tested.) This firearm was reported stolen by the Raleigh North Carolina Police Department on April 22, 2023.   Notably, this firearm is consistent in appearance with the firearm that Individual 1 can be

seen carrying on surveillance video during the shooting in the parking lot described above.

Officers then conducted a search of the vehicle and located a second firearm underneath the driver's seat. The firearm was identified as a tan Glock 19 9mm handgun with serial number BRP2387. The firearm had one round in the chamber and fifteen rounds of ammunition in a seventeen-round magazine.



Hines was arrested outside of the hospital, but charges against him were no-papered by the Superior Court division pending further investigation.

### Hines' June 4, 2023 Arrest

On Sunday, June 4th, 2023, at approximately 8:30 PM, Officer Khanh Nguyen and Officer Anel Salkanovic were in full uniform, in a marked MPD cruiser and patrolling near 2235 Savannah Terrace SE, Washington, D.C.   Officers Nguyen and Salkanovic observed a large group of people congregating in front of 2235 Savannah Terrace SE.   Individuals in this group appeared to be listening to loud music, smoking marijuana, and drinking alcohol on the street in

front of 2235 Savannah Terrace SE.   Officer Nguyen and Salkanovic approached the group.   As

they did, Mr. Hines started walking away from the group, turning his body away from the

officers.   While the rest of the group continued dancing and singing, Hines, who was wearing a

pink hat, quietly separated himself from the crowd with his head down. Officer Nguyen and

Salkanovic walked after Hines and tried to get his attention.   He ignored them and turned behind

a black SUV.   As he walked around the SUV, Officer Nguyen observed as Hines bent down and

appeared to place an object under the vehicle.   Officer Nguyen heard what sounded like a

metallic object strike the ground.



As Hines began running away, Officer Nguyen paused and looked under the vehicle where he

could see what appeared to be a firearm.



Officer Nguyen ensured that his partner was pursuing Hines and then retrieved the firearm from under the vehicle.   The recovered firearm was a black Smith and Wesson MP9 M2.0, bearing serial number NBK3472, with eleven rounds of ammunition, including one round in the chamber, and a magazine with a capacity of seventeen.   Law enforcement databases reflect that the firearm was stolen from P.G. County on March 10, 2020.



Officers were able to stop Hines a few blocks away at 2106 Savannah Terrace SE. Hines was searched incident to arrest.   Officers recovered 20 suspected fentanyl pills and a bag of white rock-like substance that weighed approximately 26 grams. The white rock-like substance was field tested and indicated a positive result for crack/cocaine. Officers also recovered $920 in a variety of denominations from Hines' right pants pocket.   Officers did not recover any pipe or other paraphernalia used to consume the recovered narcotics.   Based on the quantity of narcotics, the absence of use paraphernalia, and the recovered $920, it appears that Hines possessed these narcotics with the intent to distribute rather than for personal use.

Hines has previously been convicted of offenses carrying a maximum term of imprisonment of greater than one year.   Specifically, on April 13, 2018, Hines was sentenced in D.C. Superior Court Case No. 2017 CF2 020102 to twenty-four months' imprisonment for Unlawful Possession of a Firearm (Prior Conviction).   And, on January 11, 2021, Hines was sentenced in D.C. Superior Court Case No. 2020 FD3 003805 to eighteen months' imprisonment for Unlawful Possession of a Firearm (Prior Conviction).   Therefore, Hines was aware at the time of his arrest in this case that he had a prior conviction for a crime punishable by more than one year. There are no firearm or ammunition manufacturers in the District of Columbia and therefore, the firearm and ammunition in this case traveled in interstate commerce.

On June 5, 2023, Defendant Hines was charged by complaint with (1) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); and (2) Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).   An initial appearance was held on June 9, 2023, before the Honorable

Magistrate Judge Moxila Upadhyaya.   At that hearing, the Government made an oral motion to detain Mr. Hines pending trial.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).   The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community.  *See id.* "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:   (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."   18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States*

*v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Two separate rebuttable presumptions apply.   *First*, there is probable cause to believe that Mr. Hines committed a violation of the Controlled Substance Act the maximum penalty for which is greater than ten years' imprisonment.   *See* 18 U.S.C. § 3142(e)(3)(A).   *Second*, there is probable cause to believe that Mr. Hines committed a violation of 18 U.S.C. § 924(c).   *See* 18 U.S.C. § 3142(e)(3)(B).   A review of the 3142(g) factors only confirms the presumption that Mr. Hines should be detained pending trial.

I.   **The Nature and Circumstances of these Offenses Merit Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.   Mr. Hines is charged with serious offenses carrying significant penalties.   Mr. Hines faces maximum sentences ranging from ten to forty years, and a mandatory minimum of five years' imprisonment.   The seriousness of these offenses is confirmed by the facts underlying them.   Three weeks after being arrested following a public shooting with two guns in his vehicles, Mr. Hines was found with another loaded firearm.



He discarded this loaded firearm on a public street just feet from where multiple children

can be seen playing before fleeing from police.



The reason for his flight was soon apparent:   he was in possession of a significant

quantity of drugs, both suspected fentanyl and crack/cocaine.   Fentanyl is a synthetic opioid that

can be up to fifty-times stronger than heroin and one-hundred times stronger than morphine.
*See* Wilson N, Kariisa M, Seth P, Smith H IV, Davis NL. Drug and Opioid-Involved Overdose
Deaths — United States, 2017–2018. *MMWR Morb Mortal Wkly Rep* 2020;69:290–297.
DOI: http://dx.doi.org/10.15585/mmwr.mm6911a4.   According to the CDC, overdose deaths
from synthetic opioids like fentanyl totaled around 2,600 per year in 2011 and 2012.   That
number has steadily increased to more than 68,000 in 2021.   *See* DOJ/DEA Drug Fact Sheet:
Fentanyl, available at https://www.getsmartaboutdrugs.gov/sites/default/files/2022-
11/Fentanyl%202022%20Drug%20Fact%20Sheet_1.pdf.   Over 150 people die every day from
overdoses related to synthetic opioids like fentanyl.   *See* CHS, National Vital Statistics System,
available at https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm).   Based on the
quantity of recovered drugs and the money recovered from Mr. Hines, he is involved in the
distribution of this deadly narcotic.   And he does so while armed with a deadly loaded handgun.

     While the defendant is charged with possessory offenses, this Court has warned against
discounting the inherent danger associated with loaded firearms.   *See United States v. Blackson*,
No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023
WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract
from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended
magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby
increasing its potential to do greater harm" and placement "at the ready, on his person, and easily
within reach").   Mr. Hines kept this gun loaded, with an extended magazine, and a round in the
chamber.   *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020)
(finding that a defendant should be detained pretrial in part because "the firearm recovered from
the Defendant's person had a round already chambered, making the circumstances even more

troubling.")  Mr. Hines' gun was at the ready, on his person where he could easily and quickly grab it.

And Mr. Hines did not just possess a gun in isolation, he did so while in possession of narcotics.  This Court has repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution.  *See, e.g.*, *United States v. Carr*, 2022 WL 13947798 (D.D.C.), 4 (slip copy) (finding the first factor weighed in favor of detention given "the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.")

As such, the nature and circumstances of these offenses weigh heavily in favor of detention.

## II.     The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.   The Government's case against Mr. Hines is very strong.

With respect to the firearm charge, Mr. Hines was observed by Officer Nguyen placing what sounded like a metallic object under a vehicle before fleeing.   Officer Nguyen looked and immediately saw a firearm.   Officer Nguyen then secured the firearm moments after observing it. And all of these observations are corroborated by high-quality surveillance video.

With respect to the drug distribution charges, the suspected fentanyl and crack cocaine were found on Mr. Hines' person.   The quantities and the fact that they are two different types of narcotics suggests Mr. Hines possessed these with the intent to distribute them.   The significant quantity of cash and absence of any paraphernalia reflecting personal use corroborates this.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10.[2]  This is such a case, and Mr. Hines should be detained pretrial.

## III.    The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Hines' history and characteristics, likewise weighs in favor of detention.  Since 2009, Mr. Hines has repeatedly possessed and used firearms despite being prohibited from doing so.

On August 4, 2009, Mr. Hines got into a verbal altercation with several individuals in the 3300 block of 14th Place SE.  Mr. Hines started walking away from the group, before he turned around and fired a handgun multiple times into a crowd of approximately fifty to seventy-five people.  Three people—none of whom were Mr. Hines' intended targets—were shot.  All three required immediate medical attention and hospitalization.  Mr. Hines pled guilty to Assault with a Dangerous Weapon and two counts of Assault with Significant Bodily Injury.  On February 5, 2010, Mr. Hines was sentenced to twenty-four months' imprisonment.

---

[2] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  2023 WL 1778194, at *8.  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10.  In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision.  *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  The Second Circuit reached the same decision after a thorough and careful analysis of the issue.  *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.2

On May 12, 2015, Mr. Hines was hanging out at a park with his uncle D.M.   Hines threatened D.M. stating:   "You need to stop playing."   D.M. told Hines told leave him alone.   In response, Hines retrieved a handgun from a vehicle.   Hines hit D.M. across the head with the handgun.   Officers observed several lacerations and a bump on the side of D.M.'s head, and blood on his cheek and shirt.   On October 27, 2015, Mr. Hines pled guilty to Simple Assault and was sentenced to ninety days' imprisonment.

On November 24, 2017, Mr. Hines was pulled over for a lawful traffic stop.   In the glove compartment of the vehicle, officers recovered a black Smith & Weston SW380 handgun, loaded with six bullets and one in the chamber.   On February 13, 2018, Mr. Hines pled guilty and was sentenced to twenty-four months' incarceration.

While on supervised release for the possession of a handgun, on March 27, 2020, Mr. Hines was arrested for another assault and was found yet again to be in possession of a firearm.   On March 26, 2020, Mr. Hines and his girlfriend began arguing.   During the argument, Mr. Hines punched his girlfriend repeatedly in the face, threw her to the ground, and then kicked her multiple times while she was laying on the ground.   He then took her keys and his gun and fled the house. When Mr. Hines returned, his girlfriend alerted police who arrested him.   In his pants, Mr. Hines had a 9mm Springfield Armory XD semi-automatic pistol loaded with one round in the chamber and fourteen rounds in the magazine.   Mr. Hines pled guilty and on January 11, 2021, Mr. Hines was sentenced to eighteen months' imprisonment.   Mr. Hines was on supervised release for that case at the time of his arrest for this offense.

Mr. Hines' criminal history presents a clear and consistent pattern:   he continues to possess firearms despite arrests, imprisonment, and supervision.   And his history indicates that he is comfortable using these firearms to harm others.

14

In addition to his many firearm offenses, while pending trial for assaulting his uncle, on August 10, 2015, Mr. Hines assaulted a police officer.   Specifically, he was at CSOSA and was told that he had an active warrant for his arrest based on a parole violation.   Rather than allow the warrant to be executed, Hines pushed several officers and ran out of the building.   When officers caught Hines, he kicked two of them several times and attempted to spit on another officer.   On December 18, 2015, Mr. Hines pled guilty to Assault on a Police Officer and was sentenced to seven days' imprisonment.   His behavior in that particular case is indicative of an unwillingness to follow lawful directives and a corresponding willingness to use violence to escape consequences.

In sum, Mr. Hines' history indicates that he should be detained pending trial.

## IV.    Mr. Hines Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Mr. Hines release, similarly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33.   Mr. Hines' possession of this firearm alone presented a significant danger to our community.   *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").   And he carried that handgun in the commission of an inherently dangerous activity, the distribution of narcotics.   *See United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a

firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter).

Mr. Hines' history makes clear that his possession of a firearm on June 4 was not an isolated incident.   This is the fifth time he has been charged as an adult with crimes arising from his illegal possession of a firearm.   And he possessed his most recent firearm just weeks after he was arrested for having two firearms in his vehicle after a public shooting.   Court orders, supervision, arrests and incarceration have done nothing to sate Mr. Hines' appetite for the unlawful possession of firearms.

Given Mr. Hines history, if he is permitted to remain free pending trial he will likely continue what he has been doing since at least 2009:   obtaining, possessing, and using firearms. As such, he presents an ongoing danger to our community.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Hines pending trial on these charges.

Respectfully submitted,


MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:          /s/ Cameron A. Tepfer
             Cameron A. Tepfer
             N.Y. Attorney No. 5248208
             Assistant United States Attorney
             601 D Street NW
             Washington, D.C. 20530
             202-258-3515
             Cameron.Tepfer@usdoj.gov

16